IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW SLAVENSKI,                                Civ. No. 09-6241-AA

        Plaintiff,                            OPINION AND ORDER

    v.

BREG, INC., a California
corporation,

        Defendant.

_____

AIKEN, Chief Judge:

    Plaintiff filed suit alleging products liability and negligence after a medical device known as a "pain pump" was used to administer local anesthetics into his shoulder joint after arthroscopic surgery. Plaintiff seeks economic, non-economic, and punitive damages. Defendant Breg, Inc. (Breg) was the alleged manufacturer and distributer of the pain pump.

    Breg now moves for summary judgment on plaintiff's claims. Breg argues that plaintiff cannot establish that Breg knew or had reason to know of any inherent danger associated with pain pump use

1   - OPINION AND ORDER

prior to plaintiff's surgery, and therefore Breg had no duty to warn of such risks. Breg also argues that plaintiff cannot prove that Breg's alleged failure to warn caused his injuries, or that he is entitled to punitive damages. The motion is denied.

## BACKGROUND

Pain pumps are medical devices used to administer prescribed amounts of pain medication directly to a certain area of the body. The marketing, labeling, and sale of pain pumps are regulated by the Food and Drug Administration (FDA). The FDA classifies medical devices into three types: Class I, Class II, and Class III. 21 U.S.C. § 360c. Breg's pain pumps are Class II devices. As with other brands of pain pumps, Breg's pain pumps are prescription devices sold to and prescribed by licensed physicians.

Prior to marketing a new Class II medical device, a manufacturer must obtain Premarket Approval (PMA) for the device, unless an exception applies. See 21 U.S.C. §§ 360c, 360e. As pertinent to this case, the "substantial equivalent" exception permits the marketing of a new Class II device through the premarket notification process, commonly known as the "510(k)" notification process. Id. §§ 360c(f), 360(k). "Under the 510(k) process, if the Class II device is deemed 'substantially equivalent' to a pre-existing device with prior clearance, 'it can be marketed without further regulatory analysis.'" PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 925 (9th Cir. 2010) (quoting

Medtronic, Inc. v. Lohr, 518 U.S. 470, 478 (1996)). "In other words, that device receives '510(k) clearance' and can be put on the market." Id. The 510(k) notification process is much less rigorous than the PMA process and requires no additional testing of the device. Id.; Medtronic, 518 U.S. at 478-79.

At all relevant times, Breg's pain pumps were marketed through the 510(k) notification process for general surgical use at the "intra-operative" site. O'Leary Decl., Ex. 2 (Bates No. 6556.0088) (doc. 200, filed under seal). Breg and other pain pump manufacturers had attempted to obtain clearance through the 510(k) process to market its pain pumps for the specific indication of orthopedic use and/or use in the joint cavity. According to plaintiff, Breg attempted on three occasions to obtain 510(k) clearance for specific indications of orthopedic and intra-articular use.[1] O'Leary Decl., Ex. 2 (Bates No. 6556.0011, 6556.0179) Ex. 3; Ex. 6 (Bates No. 6574.0010); Ex. 9 (Bates No. 5396.0012) (doc. 200, filed under seal). However, the FDA determined that a substantially equivalent predicate device with this specific use did not exist and did not give clearance to market the pain pumps for use in the joint space. Rather, the FDA

---

[1] Breg disputes that it actively sought 510(k) clearance for orthopedic or intra-articular use, explaining that such terms were included in a comparison table Breg provided to the FDA and were not submitted as proposed indications. See Breg's Reply Mem., p. 5. However, all factual inferences must be construed in plaintiff's favor.

3   - OPINION AND ORDER

gave clearance for the general indication of "intra-operative" use and instructed Breg to remove any references to intra-articular or orthopedic use from materials submitted to the FDA. O'Leary Decl., Ex. 3; Ex. 6 (Bates No. 6574.0022-.0023); Ex. 7; Ex. 9 (Bates No. 5396.0097, 5396.0099). Plaintiff maintains that Breg nonetheless continued to market and sell its pain pump for use directly in the joint space, in violation of FDA regulations. Breg denies these allegations.

On November 8, 2005 and March 14, 2006, plaintiff underwent arthroscopic surgery on his shoulder. Plaintiff's surgeon, Dr. Pennington, used a Breg pain pump device to administer local anesthetics directly into his shoulder joint for up to 72 hours following surgery. Subsequently, plaintiff developed glenohumeral chondrolysis, a very rare condition involving the rapid and permanent destruction of articular cartilage in the shoulder joint.

On August 28, 2009, plaintiff filed suit. Plaintiff maintains that Breg was on notice that the use of pain pumps to deliver pain medication directly to the shoulder joint could cause harm, and that Breg nonetheless marketed its pain pumps for such use and failed to warn physicians that pain pumps had not been cleared for such use by the FDA, rending the pain pump a defective product.

## DISCUSSION

Breg moves for summary judgment on grounds that plaintiff fails to present any evidence that, at the time of his surgery, the

scientific or medical community had reason to know of any risks associated with using pain pumps to administer local anesthetics directly to the joint space. Breg contends that under Oregon law, its duty to warn is limited to the dangers of which it knew or reasonably should have known. See McEwen v. Ortho. Pharm. Corp., 270 Or. 375, 385-86, 528 P.2d 522 (1974) (drug manufacturer has duty "of making timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows, or has reason to know"); Benjamin v. Wal-Mart Stores, Inc., 185 Or. App. 444, 454, 61 P.3d 257 (2002) (a warning is required "if the seller 'has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge,' of the presence of the danger") (quoting Restatement (Second) of Torts § 402A, comment j); see also Or. Rev. Stat. § 30.920(3) (statute to be construed in accordance with Restatement (Second) of Torts, § 402A, comments a through m). Thus, Breg maintains that because it did not know or have reason to know of any association between pain pump use and chondrolysis as of November 2005, plaintiff cannot prevail on his products liability or negligence claims.[2] I disagree and find issues of material fact

---

[2]Plaintiffs' counsel has taken the position that a strict products liability claim based on failure to warn does not require that the manufacturer knew or should have known of the alleged risk of harm but only that the device was unreasonably dangerous without an adequate warning. Phillips v. Kimwood Machine Co., 269 Or. 485, 498, 525 P.2d 1033 (1974). Given the questions of fact regarding Breg's knowledge, I need not address

5    - OPINION AND ORDER

preclude summary judgment.

Though not overwhelming, plaintiff presents evidence that Breg knew or should have known of toxicity concerns associated with the administration of local anesthetics directly into the joint area. Plaintiff cites several articles that discuss the toxicity of various solutions and procedures to articular cartilage. See O'Leary Decl., Exs. 17-31, 67. In particular, a 2004 study advises that "physicians should be cautious when administering intra-articular bupivacaine and neostigmine." O'Leary Decl., Ex. 31 (Dogan, et al., *The Effects of Bupivacaine and Neostigmine on Articular Cartilage and Synovium in the Rabbit Knee Joint*, 32 J. INT'L MED. RESEARCH 513, 518 (2004)).[3] Such evidence must be considered in the context of Breg's regulatory efforts and the lack of 510(k) clearance to market pain pumps for use in the joint space, the FDA's determination that no predicate device established the efficacy and safety of such use, and Breg's continued promotion of the pain pumps for use in the joint space without FDA clearance for that specific indication.

---

this issue for purposes of Breg's motion.

[3] Generally, plaintiff should have submitted expert opinion to support counsel's interpretation of these articles. See Monroe v. Zimmer U.S. Inc., ___ F. Supp. 2d ___, 2011 WL 534037, at *19 (E.D. Cal. Feb. 14, 2011). However, in other pain pump litigation before this court, plaintiff's counsel has provided such expert opinion. See Kildow v. Breg, Inc., Civ. No. 10-12-AA, doc. 40 (Trippel Decl., Ex. 1); Cox v. DJO, LLC, 07-1310-AA, doc. 418 (Fern Decl., Ex. 1).

6     - OPINION AND ORDER

Construing all inferences in favor of plaintiff, this evidence is sufficient to create a genuine issue of material fact as to whether Breg should have known or anticipated that continuous infusion of local anesthetics directly into the shoulder joint was toxic or could cause damage. Monroe, 2011 WL 534037, at *22-23; Hamilton v. Breg, Inc., 2011 WL 780541, at *3-5 (D. Ohio Jan. 20, 2011); Koch v. Breg, Inc., 2010 WL 5301047, at *2-4 (D.S.D. Dec. 20, 2010). It is not incumbent on plaintiff to show that Breg should have known of the specific injury or damage - chondrolysis - alleged caused by the use of the pain pumps.

I recognize that several courts have held otherwise and found that any danger from intra-articular pain pump use was "not knowable" prior to 2005 or 2006. Rodriguez v. Stryker Corp., 2011 WL 31462, at *8 (M.D. Tenn. Jan. 05, 2011); see also Krumpelbeck v. Breg, Inc., 759 F. Supp. 2d 958, 974 (S.D. Ohio 2010); Pavelko v. Breg, Inc., 2011 WL 782664, at *5-6 (D. Colo. Feb. 28, 2011); Phillippi v. Stryker Corp., 2010 WL 2650596, at *3 (E.D. Cal. July 1, 2010); Meharg v. I-Flow Corp., 2010 WL 711317, at *3-4 (S.D. Ind. Mar. 1, 2010). I respectfully disagree with those decisions and instead find this question appropriate for the trier of fact. It may well be that plaintiff's evidence at trial fails to show by a preponderance that Breg had reason to know of the risks associated with pain pump use and chondrolysis. As noted by one district judge, "[t]he medical evidence that pain pumps could cause

7    - OPINION AND ORDER

chondrolysis was at best fragmentary at the time" of plaintiff's surgery. Hamilton, 2011 WL 780541, at *3. On a motion for summary judgment, however, all inferences must be construed in favor of plaintiff. So construed, genuine issues of material fact remain.

Breg also contends that plaintiff cannot show any alleged failure to warn by Breg caused his injury. Breg emphasizes that plaintiff's surgeon, Dr. Pennington, testified at deposition that he relied on his training from attending physicians regarding the use of pain pumps, placing into question whether Breg's alleged failure to warn could have caused plaintiff's injury. O'Leary Decl., Ex. 65 (Pennington Depo., pp. 11, 37, 87). However, Dr. Pennington's testimony must be considered as a whole with evidence of Breg's marketing strategies and the effect of such marketing on physician practices and training. See O'Leary Decl., Ex. 41 (Bates 1928.0015) (doc. 2000, filed under seal); Ex. 42 (Bates 2835.0016); Ex. 43 (Bates 2836.0003-.0004, 2836.0008); Ex. 44 (Bates Nos. 50983, 50985, 50992); Ex. 45 (Bates Nos. 53071); Ex. 65 (Pennington Depo., p. 88).

Finally, Breg moves for summary judgment regarding plaintiff's prayer for punitive damages. As found in other pain pump cases, plaintiff here presents little evidence that Breg had actual knowledge of harm resulting from the use of pain pumps in the joint space as of November 2005, such that Breg acted with "malice" or "reckless and outrageous indifference to a highly unreasonable risk

8  - OPINION AND ORDER

of harm" and with "conscious indifference to the health, safety and welfare of others" by marketing its pain pumps for intra-articular uses. Or. Rev. Stat. § 31.730(1); <u>Andor v. United Air Lines, Inc.</u>, 303 Or. 505, 517, 739 P.2d 18 (1987) (punitive damages "are a penalty for conduct that is culpable by reason of motive, intent, or extraordinary disregard of or indifference to known or highly probable risks to others"). However, as explained above, the extent of Breg's knowledge is a question of fact, and I decline to grant summary judgment at this time.

## CONCLUSION

Breg's Motion for Summary Judgment (doc. 193) is DENIED. IT IS SO ORDERED.

DATED this 11th day of July, 2011.

_____
Ann Aiken
United States District Judge